JUAN MENDOZA, peticionario y apelado, *v.* JUNTA DE COMISIONADOS DE SAN JUAN, P. R., formada por R. RIVERA ZAYAS, Presidente, GERMÁNICO S. BELAVAL, RAMÓN RAMOS CASELLAS, EDUARDO GONZÁLEZ y GABRIEL DE LA HABA, demandada y apelante.

No. 6422.—*Sometido:* Mayo 29, 1934. *Resuelto:* Julio 11, 1934.

*J. Valldejuli Rodríguez,* abogado de la apelante; *M. A. Martínez Dávila,* abogado del apelado.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Juan Mendoza, vecino de la Capital, dedicado a la venta de carne fresca en la ciudad procedente de mataderos de Guaynabo y otros pueblos de la Isla, inició este procedimiento de *certiorari* en la corte del distrito contra la Junta de Comisionados de San Juan en solicitud de que se declarara nula cierta ordenanza aprobada por la misma en enero 4, 1933. Se defendió la junta y sometido el caso finalmente a la corte fué resuelto en favor del peticionario por sentencia de abril 29, 1933.

Apeló la junta. La transcripción se radicó en junio 28, 1933. La apelante solicitó varias prórrogas archivando su alegato en febrero 17, 1934. En mayo 29 último se celebró la vista del recurso y el caso quedó sometido a nuestra consideración y resolución.

Parece conveniente transcribir íntegra la ordenanza cuya nulidad se pide. Es así:

"Ordenanza Núm. 118.—Para someter a inspección toda carne fresca de animales que se introduzca o venda en la Capital y que proceda de animales beneficiados fuera de los límites territoriales de la misma; para establecer las personas encargadas de esta inspección; fijar derechos de inspección; establecer penalidades por las infracciones de esta Ordenanza y para otros fines.

"Ordénase por la Junta de Comisionados de San Juan:

"Sección 1.—Por la presente queda prohibida la introducción o venta de carne fresca de animales beneficiados fuera de los límites territoriales de la Capital de Puerto Rico, si dicha carne, antes de ser expuesta para su venta, no ha sido inspeccionada ni aprobada por el Director de Sanidad y Beneficencia de la Capital, o por sus agentes en la forma y manera que más adelante se provee, y sin que la persona que la introdujere o vendiere hubiere satisfecho el arbitrio de inspección correspondiente; *Disponiéndose,* que la carne refrigerada que se importa de los Estados Unidos queda exceptuada de las anteriores disposiciones, por estar la misma sujeta a la inspección sanitaria del servicio de salud pública del Gobierno de los Estados Unidos, así como también las carnes frescas de animales beneficiados dentro de los límites del Gobierno de la Capital, las cuales quedan

exentas de las disposiciones de esta Ordenanza, por cuanto las mismas están sujetas a una adecuada inspección y los mataderos están reglamentados e inspeccionados por las autoridades del Gobierno de la Capital.

"Sección 2.—Toda persona que introdujere para consumo o venta a la Capital de Puerto Rico, carnes frescas de animales beneficiados fuera de los límites del Gobierno de la Capital, obtendrá una licencia expedida por el Departamento de Sanidad y Beneficencia de la Capital, cumplirá los requisitos que por reglamento dicho Departamento exigiere, y satisfará previamente a la Tesorería de la Capital, la suma de veinte centavos ($0.20) por cada arroba, como arbitrio o derecho de inspección.

"Sección 3.—Toda persona que introduzca dentro de los límites territoriales del Gobierno de la Capital, ofrezca a la venta o permitiere que se ofrezca a la venta, o toda persona que la venda, ofrezca o tuviere en venta, carne fresca de animales que no haya sido previamente inspeccionada y aprobada por el Director de Sanidad y Beneficencia de la Capital, o por sus agentes o delegados, en la forma que se provee, incurrirá en pena máxima de $50.00, o prisión máxima de 15 días o ambas penas a discreción del Tribunal.

"Sección 4.—El Director de Sanidad y Beneficencia, en cooperación con el Administrador de la Capital y el Tesorero de la misma, queda facultado para delegar la inspección que provee la presente Ordenanza, en los encargados de las plazas de mercado de San Juan, Puerta de Tierra y Santurce, así como en los comisarios de la Capital, cuyos empleados están adscritos a los Departamentos de Tesorería y Administración de la Capital, hasta tanto la Junta de Comisionados provea personal adecuado para este servicio de inspección.

"Sección 5.—Esta Ordenanza empezará a regir a los veinte días después de ser aprobada y publicada, conforme provee la ley, y deroga toda resolución, acuerdo u ordenanza que en todo o en parte estuviere en conflicto con sus disposiciones, y especialmente las disposiciones de la Ordenanza No. 58, aprobada por la Junta de Comisionados el día 5 de mayo de 1932."

Los motivos de nulidad aducidos fueron:

(1) Violación del artículo 2 de la Ley Orgánica porque se establece una diferencia entre la carne que se introduzca en San Juan procedente de la Isla y la que procede del mismo San Juan o de los Estados Unidos;

(2) Violación del mismo precepto legal porque se obstaculiza la competencia y venta de carne fresca en San Juan ya que se impone un tributo a la que procede de la Isla y se exonera a la de las otras procedencias;

(3) El impuesto de veinte centavos por arroba de carne introducida en San Juan de la Isla es opresivo, injusto y arbitrario, toda vez que los introductores están obligados a pagar además un arbitrio a los municipios donde el ganado se sacrifica y la licencia por los puestos que utilizan para la venta;

(4) No es uniforme ya que impone una multa máxima de cincuenta dólares o prisión máxima de quince días a los vendedores de carne precedente de la Isla que infrinjan la ordenanza y no impone igual penalidad a los vendedores de carne de ganado sacrificado en San Juan o importada de los Estados Unidos sin la inspección y el pago del impuesto acordado por la misma;

(5) Prohibe a los vendedores de carne procedente de la Isla ejercer dicho negocio en iguales condiciones que los vendedores de carne de las otras procedencias; y

(6) El Gobierno de la Capital no tiene autoridad de acuerdo con la ley de su creación para imponer el derecho de inspección que establece la ordenanza.

Comenzaremos nuestro estudio por el último, el marcado con el número 6.

Los habitantes de la Capital de Puerto Rico fueron constituídos en una corporación política y jurídica por ley de mayo 15, 1931, leyes de 1931 p. 627, cuyas facultades legislativas se extienden dentro de los límites de su territorio a todo asunto de naturaleza local que se relacione "con su gobierno, rentas y asignaciones, recaudación y desembolsos, empréstitos, obras públicas, instrucción pública, beneficencia y salud públicas, orden, seguridad y limpieza públicas, policía, cárceles, ornato, calles, parques, plazas, construcciones, mercados, mataderos, cementerios, alcantarillados, muelles, comercio, industrias, transportes, acueductos, alumbrado pú-

blico, y toda clase de servicios públicos y actividades en beneficio de la capital y para el fomento, progreso y bienestar de ésta; . . .''

Dichas facultades se ejercen por medio de un organismo de gobierno que se denomina Junta de Comisionados de San Juan, que puede imponer contribuciones y arbitrios razonables.

Las rentas de la Capital proceden de varias fuentes. Una es, según expresamente dispone el artículo 40 de la ley, ''(h) el producto de los arbitrios e impuestos que aprobare la Junta de Comisionados, entre los cuales figurarán los siguientes: . . . (9) Sobre matanza de ganado en mataderos públicos o privados, que no exceda de treinta (30) centavos la arroba de carne de cerdo y de ganado vacuno y de cincuenta (50) centavos por cada cerdo, cabro o carnero; (10) En cualquier otro arbitrio o impuesto razonable que decretare la Junta de Comisionados.''

Abarcan, pues, las facultades legislativas de la Capital la salud pública en general y los mercados y mataderos en particular, extendiéndose hasta la imposición de arbitrios e impuestos sobre la matanza de ganado en mataderos públicos o privados.

En este caso no se trata de una contribución o impuesto sobre matanza de ganado. Según la ordenanza lo que se cobra es ''la suma de veinte centavos por cada arroba, como *arbitrio* o *derecho* de inspección,'' para imponer el cual tiene a nuestro juicio en principio pleno poder la Capital. Si debe vigilar por la salud del pueblo, si mercados y mataderos se ponen bajo su dirección, y si para inspeccionar las reses que se sacrifiquen en dichos mataderos y las carnes que se vendan en dichos mercados a los efectos de garantizar la salud del pueblo se ve obligada a incurrir en gastos, claro es que puede resarcirse de ellos mediante la imposición y cobro de un derecho de inspección.

Este extremo nos parece claro. Lo que debe investigarse es si el impuesto constituye o no un justo derecho de inspec-

ción o si es en verdad un arbitrio sobre venta de carne, y si sea derecho de inspección o arbitrio, es o no uniforme. Esto nos lleva al estudio y resolución de los otros cinco motivos alegados para pedir a la corte que decretara la nulidad de la ordenanza.

De intento transcribimos la ordenanza íntegramente. Leyendo en conjunto sus disposiciones se advierte que el pensamiento generador de ellas no fué la imposición de un justo derecho de inspección sino la imposición de un verdadero tributo a la carne que se introdujera de la Isla para ser vendida en San Juan en competencia con la procedente de reses sacrificadas en San Juan mismo. Y esa impresión se vigoriza examinando los argumentos que contiene el alegato de la parte apelante en pro de la ordenanza. El propósito de ésta evidentemente no fué garantizar la salud pública a virtud de una verdadera y eficiente inspección, sino el de proteger los intereses de los vendedores de carne de reses sacrificadas en San Juan.

Pero trátese de un derecho de inspección o de un impuesto, creemos que es aparente su falta de uniformidad. El que introduce para su venta en San Juan carne procedente de otros municipios de la Isla lo hace sujeto a las leyes generales insulares de sanidad y a las ordenanzas del municipio de origen y debe proveerse además en San Juan mismo de una licencia para vender y satisfacer el derecho que se le cobre por el uso del puesto en que venda la carne en el mercado. Esos derechos son uniformes y parecen suficientes para compensar los gastos de la inspección que para garantía de los habitantes de la ciudad debe realizar su gobierno. Mas el derecho de inspección o el tributo que exclusivamente impone la ordenanza a la carne introducida en San Juan procedente de la Isla, eximiendo de él a la carne procedente de reses sacrificadas en el mismo San Juan y a la carne introducida en San Juan procedente del continente, es desigual y contrario a lo prescrito en el artículo 2 del Acta Orgánica, a saber: "Las leyes para la imposición de contribución en

Puerto Rico serán uniformes." Véanse los casos de *Suazo* v. *Lugo, Alcaide*, 42 D.P.R. 57, *Lugo* v. *Suazo*, 59 F. (2d) 386 y *Nazario* v. *Domenech*, 43 D.P.R. 792.

*Debe confirmarse la sentencia recurrida.*